No. 02-333

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 212

IN THE MATTER OF K.S, D.S., and C.S.,

    Youths In Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. BDJ-99-180-Y,
The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Carl Jensen, Cascade County Public Defender's Office, Great Falls, Montana

        For Respondent:

        Hon. Mike McGrath, Attorney General; Mark Mattioli,
Assistant Attorney General, Helena, Montana

        Brant Light, Cascade County Attorney; Gina Bishop, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  March 27, 2003

Decided:  August 12, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 The Appellant, mother S.S., appeals from the findings of fact, conclusions of law, and order entered by the Eighth Judicial District Court, Cascade County, which terminated her parental rights with respect to K.S., D.S., and C.S. We affirm.

¶2 The mother presents the following issues on appeal:

¶3 1. Did the District Court err when it permitted Martina Heavy Runner to testify as an expert for purposes of the Indian Child Welfare Act?

¶4 2. Did the District Court abuse its discretion when it terminated the mother's parental rights?

BACKGROUND

¶5 On October 6, 1999, the Cascade County Attorney's Office, on behalf of the Department of Public Health and Human Services ("DPHHS"), filed a Petition for Temporary Investigative Authority and Protective Services. The petition sought to temporarily remove N.S., K.S., D.S., and C.S. from their natural mother's care. The children's father passed away in 1996. DPHHS requested the temporary investigative authority based on a report that the mother and children were living in a trailer with very little food and no electricity, running water, or furniture. The report also indicated that the mother used alcohol and drugs in front of the children and attempted suicide on several occasions in the children's presence. DPHHS maintained that the children were either members or eligible for membership in the Little Shell Tribe and requested that the court furnish notice of the hearing to the tribe pursuant to the Indian Child Welfare Act ("ICWA").

2

The District Court granted DPHHS's petition on October 12, 1999, and DPHHS arranged for the children to live with their maternal uncle in Pondera County, Montana.

¶6 After obtaining extensions on the temporary investigative authority, DPHHS filed a Petition for Temporary Legal Custody over K.S., D.S., and C.S. on March 30, 2000. The petition did not implicate N.S., presumably because N.S. would attain the age of majority in April 2000. Following a hearing on the petition, the District Court declared the children youths in need of care and granted temporary legal custody of the children to DPHHS for a period of six months. Further, the District Court ordered the mother to complete a treatment plan which required her to: improve upon her parenting skills, maintain a chemically free lifestyle, provide adequate housing and a safe environment for the children, achieve a healthy mental status, maintain a relationship with the children while they remained in DPHHS's custody, and to cooperate fully with DPHHS.

¶7 On February 9, 2001, DPHHS petitioned the District Court to terminate the mother's parental rights with respect to K.S., D.S., and C.S. and grant permanent legal custody of the children to it. DPHHS sought permanent custody based upon the length of time the children remained in foster care and the failure of the court-ordered treatment plan. After multiple hearings and continuances the District Court issued its findings of fact, conclusions of law, and order on January 25, 2002. The court found that the mother "did not comply with or successfully complete the treatment plan" and that the conduct or condition rendering her unfit is unlikely to change within a reasonable time. Therefore, the District Court terminated the mother's parental rights with respect to K.S., D.S., and C.S. and granted permanent legal

3

custody of the children to DPHHS, assigning to DPHHS the right to consent to the children's adoption. The mother appeals from the District Court's order of termination.

## STANDARD OF REVIEW

¶8 Determinations regarding an expert witness's qualifications and competency are within the discretion of the trial court and will not be overturned absent an abuse of discretion. *In re M.R.G.*, 2003 MT 60, ¶ 6, 314 Mont. 396, ¶ 6, 66 P.3d 312, ¶ 6. Further, a district court's decision to terminate parental rights is discretionary and we review that decision to determine whether the court abused its discretion. *In re J.W.*, 2001 MT 86, ¶ 7, 305 Mont. 149, ¶ 7, 23 P.3d 916, ¶ 7. In reviewing a decision to terminate parental rights, we determine whether the district court's findings of fact supporting termination are clearly erroneous and whether the district court's conclusions of law are correct. *In re C.B.*, 2001 MT 42, ¶ 6, 304 Mont. 252, ¶ 6, 20 P.3d 117, ¶ 6. A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re J.N.*, 1999 MT 64, ¶ 11, 293 Mont. 524, ¶ 11, 977 P.2d 317, ¶ 11.

## DISCUSSION

## ISSUE ONE

¶9 Did the District Court err when it permitted Martina Heavy Runner to testify as an expert for purposes of the Indian Child Welfare Act?

4

¶10 Throughout the proceedings, DPHHS maintained that the children were enrolled or enrollable members of the Little Shell Tribe. Despite the fact that the Little Shell Tribe has yet to gain federal recognition as an "Indian tribe," the District Court concluded that the "appropriate thing to do is to err on the side of caution and apply the ICWA standard . . . ." Toward this end, DPHHS introduced Martina Heavy Runner as an expert witness. Over the mother's objection, the District Court permitted Heavy Runner to testify as an ICWA qualified expert witness. On appeal, the mother contends that the District Court abused its discretion when it accepted Heavy Runner as a qualified ICWA expert witness because she "had absolutely no credentials to give such expert testimony."

¶11 Recently, in *In re M.R.G.*, we looked to guidelines promulgated by the Bureau of Indian Affairs for direction on expert witnesses for purposes of ICWA as ICWA itself does not define the term "qualified expert witness." *See In re M.R.G.*, ¶ 10. Interestingly, *In re M.R.G.* presented the identical expert witness issue regarding the same expert, Heavy Runner. We noted that the guidelines provide as follows:

> D.4. Qualified Expert Witnesses
>
> (a) Removal of an Indian child from his or her family must be based on competent testimony from one or more experts qualified to speak specifically to the issue of whether continued custody by the parents or Indian custodians is likely to result in serious physical or emotional damage to the child.
>
> (b) Persons with the following characteristics are most likely to meet the requirements for a qualified expert witness for purposes of Indian child custody proceedings:

(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.

(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.

(iii) A professional person having substantial education and experience in the area of his or her specialty.

44 Fed.Reg. 67,593 (1979). DPHHS does not indicate which provision of the above guidelines qualifies Heavy Runner as an ICWA expert witness for the case at bar.

¶12 For purposes of subpart b(iii) above, in addition to possessing "substantial education and experience in the area of his or her specialty," it is preferable that the witness possess expertise in, and substantial knowledge of, Indian culture, family structure, and childrearing practices. *In re M.R.G.*, ¶ 12. However, the witness does not have to possess knowledge of the cultural standards of a particular Indian tribe. *In re M.R.G.*, ¶ 12.

¶13 Heavy Runner testified that she is a member of the Blackfeet Tribe. Heavy Runner stated that she has a full-blooded Little Shell aunt who related information about the Little Shell Tribe to her at a very young age. Heavy Runner maintained that she is familiar with Little Shell tribal customs pertaining to family organizations, child rearing, and social and cultural practices. At the time of trial, Heavy Runner worked as a family resource specialist for the State of Montana. Prior to that, she worked on numerous "Indian child cases" in varying professional capacities (child welfare specialist, social worker on an Indian reservation in Minnesota, adoption clerk on the Blackfeet Reservation, and teacher). Heavy

Runner testified that she has provided family services to multiple Little Shell members in the past.

¶14 Based on the foregoing, we conclude that DPHHS sufficiently established Heavy Runner's personal and professional knowledge of Indian culture, family structure, and childrearing practices for purposes of ICWA's qualified expert witness requirement. Therefore, the District Court did not abuse its discretion in accepting Heavy Runner's expert testimony. Based on this conclusion, we need not address DPHHS's contention that ICWA should not apply based on the federally "unrecognized" status of the Little Shell Tribe.

ISSUE TWO

¶15 Did the District Court abuse its discretion when it terminated the mother's parental rights?

¶16 Section 41-3-609(1)(f), MCA, provides that a court may terminate parental rights upon a finding that the child is an adjudicated youth in need of care and both of the following exist:

(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

The mother does not dispute the court's findings that the children are youths in need of care. Further, the mother admits that "not all of the conditions of treatment were technically complied with." The mother contests the District Court's "unlikely to change within a reasonable time" finding, stating that she "demonstrated, repeatedly, the remarkable progress

7

she had made in ending substance abuse and making herself more fit to parent. If anything, a complete turnaround was likely."

¶17 The court-approved treatment plan contained various goals and tasks. The plan, in part, required the mother to: complete parenting classes, enroll in a family based services program, obtain a chemical dependency evaluation, complete any recommended chemical dependency programs, submit to random urinalysis tests, maintain an appropriate residence, abstain from criminal activity, obtain mental health counseling, complete a gambling addiction evaluation, complete an anger management program, attend regularly scheduled visits with the children, and contact her social worker on a weekly basis.

¶18 At the termination hearing, Vickie Leigland, a community social worker for DPHHS, testified about the mother's compliance with the treatment plan. Leigland testified that the mother's cooperation level with the treatment plan has been "extremely low." Leigland received no documentation regarding completion of parenting classes, the chemical dependency evaluation, or anger management classes. Leigland stated that the mother failed to contact her on a weekly basis and maintain contact with the children on a regular basis. Leigland testified that, "[The mother] hasn't completed her treatment plan. There's still some of the same concerns, her anger, her unwillingness to admit that maybe she does have a problem. She tends to blame everyone else for her problems and doesn't take responsibility for what has happened." Based on these observations, Leigland concluded that the treatment plan was not successful, that the mother's conduct which renders her unable

8

to parent is unlikely to change within a reasonable time, and that termination of her parental rights was in the children's best interest.

¶19 Coral Beck, supervisor of the intervention unit in Missoula, Montana, echoed Leigland's sentiment regarding the mother's compliance with the treatment plan. Beck indicated that the mother failed to: attend parenting classes, cooperate with the random urinalysis tests, maintain the appropriate level of sobriety, or comply with the crime-free mandate. Pamela Kay Johnson, a licensed clinical professional counselor who worked with K.S. from November 2000 to May 2001, testified that "it is in [K.S.'s] best interest to remain outside the custody of her mother." Finally, for reasons discussed above, Heavy Runner testified that, in her opinion, the children should not be returned to their mother.

¶20 Admittedly, the mother presented favorable testimony from friends, family, and professionals. However, because a termination of parental rights case is a non-jury matter, it is the trial court's responsibility to weigh the evidence presented and ascertain the witnesses' corresponding credibility. *In re J.W.* (1988), 232 Mont. 46, 50, 757 P.2d 769, 771. Based on the foregoing, we cannot conclude that the court's findings are clearly erroneous. That is, substantial evidence supports the findings, the court did not misapprehend the effect of the evidence, and we are not convinced that the court made a mistake. Further, the law presumes that termination is in the best interests of a child when that child has remained in foster care under the state's custody for fifteen of the most recent twenty-two months. *See* § 41-3-604(1), MCA. The mother does not dispute the fact that the children have been in foster care since October 1999.

¶21   Given the evidence presented at trial, in conjunction with the presumption articulated in § 41-3-604(1), MCA, we hold that the District Court did not abuse its discretion when it terminated the mother's parental rights to K.S., D.S., and C.S.

¶22   Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE