2009 MT 207
IN THE MATTER OF: T.W.F. and A.R.M., Youths in Need of Care.
DA 08-0632
Supreme Court of Montana.
Submitted on Briefs: May 20, 2009
Decided: June 16, 2009
For Appellant: Jim Wheelis, Chief Appellate Defender; Tammy A. Hinderman Assistant Appellate Defender, Helena, Montana
For Appellee: Hon. Steve Bullock, Montana Attorney General; Mark Mattioli, Assistant Attorney General, Helena, Montana Leo J. Gallagher, Lewis and Clark County Attorney, Helena, Montana Lucy W. Darty, Assistant Attorney General, Missoula, Montana
Chief Justice Mike McGrath delivered the Opinion of the Court.
¶ 1 M.G., mother of minor children T.W.F. and A.R.M., appeals from the November 14, 2008, Findings of Fact, Conclusions of Law and Order Terminating Birth Mother's Parental Rights, entered by the Montana First Judicial District Court, Lewis and Clark County.
¶ 2 M.G. presents the following issues for review:
¶ 3 Issue One: Whether the District Court held a "proper hearing" to adjudicate the children as youths in need of care.
¶ 4 Issue Two: Whether the District Court properly relied on the testimony of an Indian Child Welfare Act expert when adjudicating the children as youths in need of care.

PROCEDURAL AND FACTUAL BACKGROUND
¶ 5 In August, 2004, the Montana Department of Public Health and Human Services (DPHHS) filed a petition in Powell County for emergency protective services and temporary legal custody of M.G.'s two children, then aged five years and nine months. The petition was prompted by M.G.'s having left the children with a 16-year-old babysitter and not returning after 24 hours. The District Court granted temporary legal custody to DPHHS and in September, 2004, conducted a hearing. M.G. did not appear at the hearing. The District Court determined that the children were youths in need of care and granted DPHHS temporary legal custody. The children have been in foster care since that time.
¶ 6 The District Court held an adjudicatory hearing in December, 2004 with M.G. present. After hearing testimony from a DPHHS social worker, the District Court again concluded that the children were youths in need of care and held that dismissing the DPHHS petition would create substantial risk of harm to the children. The case was then transferred to Lewis and Clark County and counsel was appointed for M.G.
¶ 7 The District Court held a dispositional hearing in February, 2005, at which M.G. indicated that the children were going to be enrolled as members of the Turtle Mountain Band of Chippewa Indians. DPHHS presented the testimony of Patsy Oberweiser, a social worker employed by the Department, as an expert regarding the Indian Child Welfare Act (ICWA). A purpose of the ICWA is to protect the interests of Indian children and families by establishing minimum Federal standards that must be met before Indian children may be removed from their families. 25 U.S.C. § 1902. Oberweiser testified that she was a member of the Little Shell Tribe of Chippewa Indians of Montana, and explained her education, training and experience dealing with tribal customs. She testified that in her opinion returning the children to M.G. would likely result in serious emotional or physical abuse or neglect. M.G. was then in custody awaiting sentencing for a criminal offense and stipulated that it would be in the best interests of the children that they remain in an out-of-home placement. She also agreed to a treatment plan.
¶ 8 In August, 2005, the District Court held a hearing on a DPHHS petition to extend temporary legal custody and on a permanency plan. M.G. was then incarcerated for the prior criminal offense and agreed to the extension of custody. Oberweiser again testified as an ICWA expert that reunification with the parents would likely result in harm to the children. The District Court granted the DPHHS petition to extend legal custody and approved the permanency plan.
¶ 9 The District Court conducted another permanency plan hearing in March, 2006. M.G. and DPHHS stipulated to an extension of temporary legal custody of the children. M.G. was still incarcerated and had completed Phase 1 of her treatment plan while in prison. In July, 2006 DPHHS filed a petition for permanent legal custody and for termination of parental rights. The District Court held hearings in July and December, 2006, at which DPHHS presented testimony concerning M.G.'s problems completing Phase 2 of the treatment plan since leaving prison. In March, 2007, the District Court held the hearing on the DPHHS petition for permanent legal custody and for termination of parental rights. By this time the children had been in foster care since August, 2004, and M.G. had spent substantial time in prison.
¶ 10 As a result of the March, 2007 termination hearing, the District Court terminated M.G.'s parental rights. She appealed to this Court. DPHHS conceded on appeal that the record did not include evidence of compliance with the tribal notice requirements of the ICWA. On September 12, 2007, we remanded to the District Court with directions that DPHHS comply with the tribal notice and filing requirements.
¶ 11 After remand DPHHS filed another petition to adjudicate the children as youths in need of care and for temporary legal custody. The District Court held a hearing on this petition in November, 2007. Over objection of M.G.'s attorney, the District Court took judicial notice of its prior orders and of the record developed prior to the appeal. Oberweiser testified as DPHHS's ICWA expert, explaining that she was familiar with Chippewa tribal customs relating to family life based upon her own upbringing by her mother who was a member of the Chippewa Tribe. She testified that she was familiar with child rearing practices in Native American homes and had extensive knowledge of prevailing social and cultural standards in the Tribe. She testified that she had been trained as an ICWA specialist and had experience delivering family and child services to Native American families. She testified that if M.G. were given custody it could result in serious physical or emotional harm to the children because of M.G.'s inability to stop her substantial alcohol consumption.
¶ 12 On November 21, 2007, the District Court entered findings of fact that the Tribe had been properly notified and that Oberweiser had testified that returning custody of the children to M.G. would likely result in serious emotional or physical damage to them. The District Court concluded that DPHHS had established by clear and convincing evidence that the children were youths in need of care and that dismissing the petition would be detrimental to the children's physical and psychological well-being. Further the District Court concluded that DPHHS had made reasonable efforts to avoid protective placement of the children and that placement of the children in foster care was in their best interests and was in compliance with 25 U.S.C. § 1915.
¶ 13 After the November, 2007, order, DPHHS continued working with M.G. on her treatment plan with the goal of reuniting her with her children. The District Court held additional hearings in February and June, 2008. By the time of the June hearing, M.G. had completed the program at the Montana Chemical Dependency Center, but had failed to follow through after that. She had continued to drink and had been arrested in Butte. When M.G. continued to not follow the treatment plan, DPHHS filed a petition for permanent custody and termination of parental rights.
¶ 14 The District Court held a hearing on the DPHHS petition in November, 2008. DPHHS presented evidence of M.G.'s failure to comply with her treatment program, including failing to provide urine tests, refusing to take urine tests, having multiple arrests, failing to have a mental health evaluation, failing to maintain an adequate residence, and more. She also missed a number of scheduled visits with the children.
¶ 15 Patsy Oberweiser testified again as an ICWA expert for DPHHS. She explained that she was familiar with the customs of the Chippewa Tribe because she was a tribal member and had been raised by her mother among other Indian families. She testified that she was familiar with child raising standards and practices in Native American homes and that she particularly had knowledge of those matters as to the Chippewa Tribe. She testified that she had received training in each of the prior four years in the requirements of the ICWA. She stated her opinion that if M.G. continued to have custody of the children it would likely result in emotional or physical harm to them. She stated her opinion that the current foster care of the children was the best placement for them and that the foster parents support the children's Native American heritage. There was no objection to Oberweiser's qualifications or to her testimony as to these opinions.
¶ 16 On November 14, 2008, the District Court issued its Findings of Fact, Conclusions of Law and Order Terminating Birth Mother's Parental Rights. The District Court found that the children were abused and neglected. The District Court based the order on M.G.'s criminal history, and her history of chemical dependency, instability, infrequent visitation with her children, failure to address mental health issues, failure to obtain adequate housing and failure to make reunification with her children a priority. The District Court found that DPHHS had developed an appropriate treatment plan but that M.G. had failed to comply with it, and M.G. was not likely within a reasonable time to change the conduct that made her an unfit parent. The District Court concluded that termination of the parent-child relationship was in the best interests of the children.

STANDARD OF REVIEW
¶ 17 We review a district court's decision to terminate parental rights for abuse of discretion. In doing so we review the findings of fact to determine whether they are clearly erroneous and the conclusions of law to determine whether they are correct. In the Matter of M.R.G., 2003 MT 60, ¶ 6, 314 Mont. 396, 66 P.3d 312. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. In the Matter of K.S., 2003 MT 212, ¶ 8, 317 Mont. 88, 75 P.3d 325. A district court has discretion to determine the qualifications of an expert witness and the court's determination will not be overturned unless there was an abuse of discretion. In the Matter of K.H., 1999 MT 128, ¶ 11, 294 Mont. 466, 981 P.2d 1190.
¶ 18 In an ICWA case we will uphold the district court's termination of parental rights if a reasonable fact finder could conclude beyond a reasonable doubt that continued custody by the parent is likely to result in serious emotional or physical damage to the child. In the Matter of A.N., 2005 MT 19, ¶ 19, 325 Mont. 379, 106 P.3d 556.

DISCUSSION
¶ 19 Issue One: Whether the District Court properly adjudicated the children as youths in need of care and properly terminated M.G.'s parental rights. M.G. contends that the District Court's adjudication of the children as youths in need of care and termination of her parental rights was the result of a flawed process. She argues that the District Court improperly relied upon proceedings that occurred prior to the first appeal to this Court, and that there was insufficient evidence to support the District Court's decisions.
¶ 20 Under Montana law a court may terminate the parental relationship if the child is adjudicated a youth in need of care and if the parent has not complied with an appropriate court-approved treatment plan and the conduct or condition of the parent that renders her unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. The court must first hold a hearing and adjudicate the children as youths in need of care. In re T.C., 2001 MT 264, ¶ 15, 307 Mont. 244, 37 P.3d 70. Under § 41-3-437, MCA and 25 U.S.C. § 1912 (of the ICWA) a court may adjudicate an Indian child to be a youth in need of care if there is clear and convincing evidence that the child is abused and neglected. Abuse or neglect under Montana law is actual physical or psychological harm, or the substantial risk of it. Section 41-3-102(7)(a), MCA. In an ICWA case the State must prove that it has made active efforts to avoid removing the children from the home, and must present testimony from a qualified expert witness that continued parental custody is likely to result in serious emotional or physical harm to the children. 25 U.S.C. § 1912(d)-(e).
¶ 21 The District Court did not improperly rely on the record of its proceedings in this matter that occurred prior to the 2007 appeal to this Court. After this Court's remand, DPHHS complied with the tribal notice requirements, but the children's Tribe never appeared or intervened. In the post-remand proceedings, the District Court duly noted the several years of proceedings, testimony, stipulations and rulings that had taken place regarding M.G. and her children. At the same time, it is clear that the District Court intended to and did hold a full evidentiary hearing on the DPHHS petition for readjudication of the children as youths in need of care. The District Court held hearings and heard testimony on November 16, 2007, December 3, 2007, and February 8, 2008. The hearing regarding termination was held November 3, 2008.
¶ 22 At the termination hearing the District Court received evidence that M.G. had been charged with four separate criminal offenses involving alcohol and was the subject of a bench warrant. There was testimony from an alcohol counselor that M.G. started an intensive outpatient drug treatment program but stopped coming after five sessions, indicating a high potential for substance use that can only be controlled by incarceration or inpatient treatment. There was testimony from Oberweiser that there were no family members available to take the children and that they would likely be harmed by returning them to M.G. There was testimony from the child protection specialist with DPHHS that M.G. had not completed any of the parts of the treatment plan that she had agreed to two years before. There was testimony about the efforts of DPHHS to achieve M.G.'s reunion with the children. These included scheduling and facilitating visitations, providing M.G. money and bus tickets to travel for visitations, providing M.G. with information on the serious health issues affecting her older son, providing M.G. with opportunities for drug and alcohol treatment, arranging for a parenting assessment, and attempting to maintain contact with M.G. All these efforts were designed to encourage completion of the treatment plan.
¶ 23 There was testimony that despite these efforts M.G. was not likely to change her pattern of substance abuse and her unstable lifestyle. There was testimony that the children needed stability and predictability in their lives that M.G. could not provide, and that it would be devastating for them if their foster parent relationship were terminated. The opinions of professionals who had worked with M.G. or the children were that she was unable to be an effective parent for her children and that returning them to her would likely result in serious emotional or physical harm.
¶ 24 There was sufficient substantial credible evidence in the record of the District Court after remand to support the decisions that the children were youths in need of care and that M.G.'s parental rights should be terminated.
¶ 25 Issue Two: Whether the District Court properly relied on the testimony of an Indian Child Welfare Act expert when adjudicating the children as youths in need of care. M.G. argues that DPHHS failed to present sufficient expert testimony, required by the ICWA, to support the District Court's decisions. The ICWA requires that
no termination of parental rights may be ordered in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.
25 U.S.C. § 1912(f). The act does not define "qualified expert witnesses" but the United States Department of the Interior has adopted regulations that do so. We have found the regulations persuasive and apply them when interpreting the ICWA. Matter of M.R.G., ¶ 10. The Federal regulations list characteristics of expert witnesses "most likely" to meet the requirements of the ICWA:
(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.
(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.
(iii) A professional person having substantial education and experience in the area of his or her specialty.
44 Fed. Reg. 67,593 (1979). Those guidelines are substantially reflected in Montana law, § 41-3-102(24), MCA. The guideline that the expert have substantial knowledge of Indian culture does not mean that the witness must have knowledge of the cultural standards of the particular tribe. Matter of M.R.G., ¶ 12; Matter of K.H., ¶ 28. An expert in an ICWA case can testify based upon a review of the file. Matter of A.N., ¶¶ 28-30. The goal of the guidelines and the requirement of expert testimony is to secure the input of persons who "possess significant knowledge of and experience with Indian culture, family structure, and childrearing practices in general." Matter of K.H., ¶ 28.
¶ 26 While expert input is required in an ICWA case, the district court "need not conform its decision to a particular piece of evidence or a particular expert's report or testimony as long as a reasonable person could have found, beyond a reasonable doubt, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." Matter of A.N., ¶ 32. The requirement of proof beyond a reasonable doubt was intended to require intelligent evaluation of the cultural and social premises of Indian home life and childrearing before a removal or termination decision is made. Matter of K.H., ¶ 20.
¶ 27 The ICWA also requires that when the State seeks to remove Indian children or terminate parental rights, it must "satisfy the court that active efforts have been made" to provide services designed to prevent breakup of the family. 25 U.S.C. § 1912(d). The requirement of "active efforts, by definition, implies heightened responsibility compared to passive efforts." Matter of A.N., ¶ 23. While the State cannot simply wait for a parent to complete a treatment plan, for example, a court may consider the parent's failure to participate. Matter of A.N., ¶ 23.
¶ 28 M.G.'s first hurdle in attacking the sufficiency of the evidence or expert testimony presented below is that she did not object to it at the time. We are reluctant to fault a district court for failing to address alleged deficiencies that were not brought to its attention at a time when any deficiencies could have been cured. In the Matter of A.N.W., 2006 MT 42, ¶ 41, 331 Mont. 208, 130 P.3d 619. Moreover, we are persuaded that there was sufficient evidence presented to meet the requirements of the ICWA and Montana law.
¶ 29 The evidence submitted at the November 3, 2008, termination hearing was summarized above. The District Court received evidence from alcohol counselor Callee Nolden who described M.G.'s failure to meaningfully participate in outpatient treatment, and the serious likelihood that M.G. would continue her pattern of substance abuse. Patsy Oberweiser, who had testified as an Indian cultural expert in several previous hearings involving M.G. and her children, testified that in her opinion returning the children to M.G.'s care would likely result in serious emotional or physical damage. Oberweiser was qualified to present this testimony based upon her own upbringing by her own Indian mother in an Indian community and her affiliation with the Chippewa Tribe that claimed M.G.'s children as members. Christa Anderson, a child protection specialist with DPHHS had worked with M.G. for several years and testified in detail about M.G.'s failure to complete any of the requirements of her treatment plan.
¶ 30 Anderson also specifically noted the "active efforts" that DPHHS had made to avoid removal of the children and to work toward reunification with M.G. She also testified that M.G. had not changed in the years that DPHHS had been involved and was not likely to change in the foreseeable future. She testified that M.G.'s continued substance abuse and unstable life would likely cause serious emotional or physical damage to the children.
¶ 31 There was no substantial evidence of any kind to contradict the evidence presented by DPHHS. A reasonable person would have concluded, as the District Court concluded, that beyond a reasonable doubt the children were in need of care and that M.G.'s parental rights should be terminated. Termination of parental rights is a non-jury matter, and it is the responsibility of the district court to weigh the evidence and assess the credibility of the witnesses. Matter of K.S., ¶ 20. After reviewing the evidence, we conclude that the District Court's findings are not clearly erroneous. By the time of the termination hearing, the children had been in foster care for several years, and foster care was the only home the younger boy had known. There is a presumption in Montana law that termination is in the best interests of the child when the child has remained in foster care for fifteen of the most recent twenty-two months. Section 41-3-604, MCA. The children here far exceeded the threshold for triggering that presumption.
¶ 32 We affirm the decision of the District Court.
JUSTICES MIKE McGRATH, W. WILLIAM LEAPHART, JIM RICE, PATRICIA COTTER, JAMES C. NELSON concur.