

DA 12-0705

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 133

IN THE MATTER OF:

K.B. and T.B.,

    Youths in Need of Care.

APPEAL FROM:     District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause Nos. DDN-11-006 and
DDN-11-007
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Nancy G. Schwartz, Attorney at Law, Billings, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

        John Parker, Cascade County Attorney, Matthew S. Robertson, Deputy
County Attorney, Great Falls, Montana

        Submitted on Briefs:  April 17, 2013

        Decided:  May 14, 2013

Filed:

                _____
                           Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     C.B., a member of the Chippewa Cree Tribe, appeals an order of the Eighth Judicial District Court, Cascade County, alleging that the court terminated her parental rights without following the requirements of the federal Indian Child Welfare Act, 25 U.S.C. § 1901 et. seq. We restate the issue on appeal as follows: *Whether the termination proceedings complied with statutory requirements for proceedings involving Indian children.*

¶2     We reverse the District Court's termination order and remand the case for the purpose of curing statutory deficiencies and holding a new termination hearing.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     C.B. (Mother) is an enrolled member of the Chippewa Cree Tribe (Tribe). Each of her two children—two-year-old K.B. and five-year-old T.B.—qualifies as an "Indian child" under the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1903(4). ICWA's procedural requirements for involuntary proceedings involving Indian children and its criteria for termination of parental rights thus govern this case.

¶4     On January 21, 2011, Mother, while extremely intoxicated, took the children outside for a walk in cold weather conditions. Proceeding down a busy street, Mother tipped the stroller over, causing the children to fall into snow and sleet. The children were transported to the emergency room to be treated for hypothermia and then were placed in a youth protective facility. Mother was arrested for two counts of felony criminal endangerment. After communicating with Mother, Kami Moore, the Montana Department of Public Health and Human Services (Department) child protection

2

specialist assigned to the case, placed the children with their maternal grandmother in Box Elder, Montana.

¶5 On January 28, 2011, the Department filed a Petition for Emergency Protective Services, Adjudication as Youth in Need of Care and Temporary Legal Custody. The District Court set a show cause hearing on the petition for March 7, 2011. On February 2, 2011, the court issued a citation to Mother, directing her to appear at the hearing. The Cascade County Attorney's Office sent notice of the hearing to the Tribe by certified mail, return receipt requested, on February 3, 2011. At the March 7, 2011 show cause hearing, Mother appeared with her attorney and stipulated that her children were youths in need of care. The court adjudicated the children as youths in need of care and granted temporary legal custody to the Department, pending a dispositional hearing.

¶6 A dispositional hearing was held on April 11, 2011, at which the Department presented a proposed treatment plan for Mother, who did not appear but was represented by counsel. Mother's counsel did not object to the treatment plan and stated that he had not had contact with Mother. Among other provisions, the plan required Mother to maintain sobriety, complete a chemical dependency evaluation, submit to random drug and alcohol screenings, acquire a stable residence, maintain employment, demonstrate that she could financially support the children, and maintain contact with Moore and with the children. Following the hearing, the court entered an order adopting the State's proposed treatment plan for Mother, approving the children's current placement with their maternal grandmother and granting temporary legal custody of the youths to the Department for six months.

¶7 The Tribe filed a Notice of Appearance and Intervention on June 29, 2011. The notice stated that "the Tribe's social service and other personnel will be available to assist the Court in its deliberations" and that the Tribe was reserving the right "to move for a transfer of jurisdiction in this cause should that become necessary." The District Court held a status hearing on July 11, 2011, at which Mother appeared and agreed to follow the treatment plan.

¶8 The court granted the Department several extensions of temporary legal custody of the children between September 2011 and July 2012, as Mother attempted to complete the treatment plan but made limited progress. The court also held numerous status hearings, at which Mother's counsel often appeared without Mother and reported that he had had no contact with her. Moore's reports also indicated that Mother, in contravention of the treatment plan, failed to keep in contact with Moore and with the children. Those events, detailed below, led the Department to develop a plan for permanent placement of the children and eventually seek termination of Mother's parental rights.

¶9 On October 3, 2011, the District Court held a hearing on the State's petition to extend legal custody, at which Mother was present with counsel and the Tribe appeared telephonically. The court granted the State's petition to extend temporary legal custody for an additional six months "to allow the Mother to complete her treatment plan and to allow the child[ren] to be reunified with the Mother."

¶10 On January 23, 2012, the court held a status hearing, at which Mother was not present but was represented by counsel. The Department informed the court that it intended to seek termination of Mother's parental rights. According to the court,

4

Mother's attorney "took no position because he had not had any contact with his client in quite some time."

¶11 On April 13, 2012, the county attorney filed a Petition to Extend Temporary Legal Custody. The attached affidavit of Moore stated that:

> [Mother] . . . has not had any contact with me for four months. The numbers that she has provided me with have either been disconnected or are wrong numbers. [Mother] is not engaged with any of her services providers or me. [Mother] does not visit with her children so she is losing any connection she may have had with them.

A few days later, the county attorney filed a Motion for Permanency Plan Hearing and Notice of Permanency Plan Report. The attached report and plan, prepared by Moore, stated that the Department's "primary goal" was "reunification with the birthmother [sic], dependent on the completion of the treatment plan," but "if reunification does not occur[,] the concurrent plan is adoption with family." The report noted that the children's maternal grandmother expressed desire to serve as the children's permanent placement.

¶12 On April 16, 2012, the court held a hearing on the proposed permanency plan, at which Mother was present with her counsel and, according to the court, "took no position" on the plan. The court's April 24, 2012 order adopting the permanency plan stated that "Mother stipulated to the extension of Temporary Legal Custody for a period of 3 months and to the permanency plan. The Mother stated that she is currently in chemical dependency treatment and is attempting to demonstrate that she is committed to completing the treatment plan."

¶13 On June 20, 2012, the county attorney filed another petition to extend temporary legal custody so that Mother would have "time to work towards the successful

5

completion of her respective court-ordered treatment plan." Moore's attached affidavit stated once again that Mother had not been in contact with her and the Department would "start the termination process."

¶14 On September 17, 2012, the county attorney filed a Petition for Permanent Legal Custody and Termination of Parental Rights. The petition requested termination of Mother's parental rights pursuant to § 41-3-609(1)(f), MCA, due to failure to comply with the court-ordered treatment plan. The District Court set a termination hearing for October 22, 2012.

¶15 Mother appeared with counsel at the termination hearing and contested the termination of her parental rights, suggesting instead that the State be granted a long-term guardianship of the children. The Tribe did not appear. Mother's attorney informed the court:

> I don't think alcoholism is a reason to terminate under the Indian Child Welfare Act. My client has been making visits. My client is employed. And my client has been going to group care, in regard to an alcohol issue. The Indian Child Welfare Act does not encourage termination regarding alcoholism. . . .

Because counsel could not support his client's position with a specific citation to ICWA, the court responded that it could not consider counsel's objection: "I'm saying, for the record, to the Montana Supreme Court and to you, frankly, I can't consider an objection on legal authority that's not cited to the Court."

¶16 The court heard testimony from Anna Fisher, the State's ICWA expert, who opined that the children would be "at risk" if returned to Mother's custody and that termination was "in the best interest of the children."

6

¶17 At the conclusion of the hearing, the District Court terminated Mother's parental rights. The court's November 1, 2012 order stated that, "except for a period of time between February and July of 2011, where mother was living with her mother, the maternal grandmother, in Box Elder with the child[ren] and grandmother under a safety plan, mother has not completed any requirement of her treatment plan." The court noted that Mother had been given numerous opportunities to comply with the treatment plan, but had on every occasion failed to follow through. The court also relied on Fisher's hearing testimony, which it summarized as follows:

> A qualified Indian Child Welfare Act expert testified at this hearing and testified essentially that continued or resumed custody of the children with the mother was likely to result in immediate risk of harm to the children, due to the mother's failure to obtain and maintain a stable home as required by her treatment plan, and the immediate danger of alcohol relapse, due to her continued untreated Chemical Dependency problem.

The court found that "termination is not contrary to the customs of the Chippewa Cree Tribe," and that "circumstance[s] of abject failure or refusal of a parent to engage and endeavor in any positive manner, to address manifest parental problems" supported its decision to terminate Mother's parental rights. Mother appeals.

## STANDARD OF REVIEW

¶18 We review for an abuse of discretion the district court's decision to terminate parental rights. *In the Matter of T.W.F. and A.R.M.*, 2009 MT 207, ¶ 17, 351 Mont. 233, 210 P.3d 174. In a case governed by ICWA, we will uphold the district court's termination of parental rights if a reasonable fact-finder could conclude beyond a reasonable doubt that continued custody by the parent is likely to result in serious

7

emotional or physical damage to the child. *T.W.F.*, ¶ 18 (citing *In the Matter of A.N.*, 2005 MT 19, ¶ 19, 325 Mont. 379, 106 P.3d 556). "A district court's application of the law to the facts of a case is a legal conclusion which we review to determine whether the interpretation of the law is correct." *In re J.W.C.*, 2011 MT 312, ¶ 15, 363 Mont. 85, 265 P.3d 1265 (quoting *In re C.H.*, 2000 MT 64, ¶ 9, 299 Mont. 62, 997 P.2d 776).

¶19 ICWA provides that "any parent or Indian custodian from whose custody such [Indian] child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of section 1911, 1912, and 1913 of this title." 25 U.S.C. § 1914.

**DISCUSSION**

¶20 *Whether the termination proceedings complied with statutory requirements for proceedings involving Indian children.*

¶21 Congress enacted ICWA in 1978 to address the "alarmingly high" percentage of Indian families "broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies" and the "alarmingly high" percentage of placement of those children "in non-Indian foster and adoptive homes and institutions." 25 U.S.C. § 1901(4). Thus, in order to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families," ICWA provides minimum federal standards, which must be followed strictly by state courts, to ensure that placement "will reflect the unique values of Indian culture." 25 U.S.C. § 1902; *see* Guidelines for State Courts; Indian Child Custody Proceedings (ICWA Guidelines), 44 Fed. Reg. 67584, 67586, § A.1 (Nov. 26, 1979) ("Proceedings in state courts involving

8

the custody of Indian children shall follow strict procedures and meet stringent requirements to justify any result in an individual case contrary to these preferences.").

¶22 Mother argues that notice of the termination proceedings was insufficient under ICWA, which provides:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. . . . No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . .

25 U.S.C. § 1912(a). As a preliminary matter, we disagree with the State that Mother's failure to object before the District Court waives our review of this issue. A "court of competent jurisdiction" under 25 U.S.C. § 1914 has been held to include an appeals court; thus, failure to comply with ICWA notice requirements may be raised for the first time on appeal. *See In re Gabriel G.*, 206 Cal. App. 4th 1160, 1166 (Cal. App. 2012) (recognizing that "[t]he issue of ICWA notice is not waived by the parent's failure to first raise it in the trial court") (internal citation omitted). We are in agreement with numerous other jurisdictions that 25 U.S.C. § 1914 "specifically confers standing on a parent to petition a court to invalidate a termination proceeding upon showing that notice requirements have not been satisfied." *In the Interest of W.D.H.*, 43 S.W.3d 30, 38 (Tex. App. 2001); *see also In re L.A.M.*, 727 P.2d 1057, 1059 (Alaska 1986); *In re S.M.H.*, 103 P.3d 976, 981-82 (Kan. App. 2005).

9

¶23 Mother concedes that "[w]hen the proceedings first began, the State filed notice in compliance with the Act," but argues that the State did not provide sufficient notice of the termination proceedings. Mother points out that no certificate of service was filed with the court or attached to the petition for termination—even if there was, she argues that the Tribe should have received notice of the termination proceeding by registered mail with return receipt requested, at least ten days prior to the termination hearing.

¶24 As noted, the Tribe received notice of the initial dependency proceedings by registered mail, in accordance with 25 U.S.C. § 1912(a), and filed a notice of intervention in the case. The State's September 17, 2012 Petition for Permanent Legal Custody and Termination of Parental Rights, as well as the court's order setting the termination hearing, indicate by notation that copies were "cc'd" to Mother, Mother's counsel and the Tribe, but the Petition includes no accompanying certificate of service and the record contains no documentation to demonstrate that timely service was accomplished.[1] The Tribe did not appear at the termination hearing.

¶25 This Court has found persuasive the ICWA Guidelines adopted by the Bureau of Indian Affairs and applies them in Indian child custody cases. *J.W.C.*, ¶ 21. The Guidelines state that "[t]he time limits are minimum ones required by the Act." ICWA Guidelines, 44 Fed. Reg. at 67589, § B.5. The ICWA Guidelines further provide that

---

[1] A certificate of service executed by the Cascade County Sheriff indicates that Mother may have been served on October 14, 2012—only eight days prior to the termination hearing—with copies of the Citation, Order to Show Cause, Notice of Show Cause and Adjudicatory Hearing, and Temporary Legal Custody, and Affidavit of Child Protection Specialist for Emergency Protective Services and Temporary Legal Custody. The document thus does not verify that Mother was served with notice of the termination proceedings. It does not even include Mother's correct name.

10

"[t]he original or a copy of each notice sent pursuant to this section shall be filed with the court together with any return receipts or other proof of service" so that "there will be a complete record of efforts to comply with the Act." ICWA Guidelines, 44 Fed. Reg. at 67588-89, §§ B.4(d)-B.5. Since the record does not reflect that both Mother and the Tribe received notice ten days in advance of the hearing, we conclude that notice was insufficient under 25 U.S.C. § 1912(a). *See People ex rel. S.R.M.*, 153 P.3d 438, 442 (Colo. App. 2006) (failure to provide notice of termination proceedings "violates the plain meaning of 25 U.S.C. § 1912(a)," even where the state provided proper notice of the dispositional hearing); *S.H. v. Calhoun Co. Dept. of Human Res.*, 798 So. 2d 684, 692 (Ala. Civ. App. 2001) (same).

¶26     Mother argues next that the State failed to demonstrate beyond a reasonable doubt that her continued custody was "likely to result in serious emotional or physical damage [to] her children" and "that the Department utilized 'active efforts' to reunite [Mother] with her children."

¶27     We agree with Mother that the State's case lacked the required expert testimony that Mother's conduct would likely cause serious emotional or physical harm to the children. ICWA provides:

> No termination of parental rights may be ordered . . . in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(f). Additionally, Montana's statute governing the termination of parental rights was amended in 2005 to include the following:

(5) If a proceeding under this chapter involves an Indian child and is subject to the federal Indian Child Welfare Act, a *qualified expert witness is required to testify* that the continued custody by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

Section 41-3-609(5), MCA (emphasis added).

¶28   Though "a district court need not conform its decision to the expert's testimony," the language of both ICWA and § 41-3-609(5), MCA, makes clear that expert testimony on the issue is necessary in making a termination decision. *See In re D.S.B.*, 2013 MT 112, ¶ 18, ___ Mont. ___, ___ P.3d ___; *A.N.*, ¶ 32; *T.W.F.*, ¶ 26. Accordingly, failure to elicit expert testimony regarding whether continued custody will result in serious emotional or physical damage to the children requires reversal of the termination order.

¶29   Here, as noted, the ICWA expert was questioned regarding whether the children would be "at risk" if placed in Mother's custody and whether termination was "in the best interest of the children"—not whether Mother's continued custody would likely result in serious emotional or physical damage. Fisher testified in pertinent part as follows:

> Q. Okay. Based on this case, do you believe that the children would be at risk if they were to be returned to their mother?
>
> A. With the mother not having a stable home of her own, yes, I do.
>
> .   .   .
>
> Q. What about mother's chemical dependency issues and the fact that she hasn't had to complete any treatment?
>
> A. I just briefly spoke with the mother and she said that she'd been clean for a while, but I don't know that. So –
>
> Q. Okay.

A. – but with chemical dependency, no, I would not return them.

Q. Okay. And do you believe that termination is in the best interest of the children at this time?

A. At this point, yes.

.   .   .

THE COURT: What's the risk that you're concerned about?

THE WITNESS: Of them being returned to their mother?

THE COURT: Yes.

THE WITNESS: Not a stable home environment and relapsing, for the mother. Right now they're in a safe environment with their grandmother. And like I said, she has brothers and sisters that are able to help out.

.   .   .

[CROSS-EXAMINATION]

Q. Good morning. Do you think, if, given additional time or more of an opportunity, that [Mother] could follow through with the chemical dependency and become a functioning parent of these children?

A. I believe it could happen, yes, I do.

In the absence of expert testimony that continued custody with Mother would likely result in serious emotional or physical damage to the children, the evidentiary record does not meet the statutory standard to support the required finding beyond a reasonable doubt. Based on Fisher's testimony, the District Court found that placement with Mother was "likely to result in immediate risk of harm to the children"—an insufficient finding under 25 U.S.C. § 1912(f) and § 41-3-609(5), MCA, to support the court's termination order.

13

¶30 The ICWA Guidelines indicate that evidence of alcohol abuse alone is insufficient to determine "that continued custody is likely to result in serious emotional or physical damage to the child." ICWA Guidelines, 44 Fed. Reg. at 67593, § D.3.c. While the court properly may consider all evidence presented during the hearing in determining the sufficiency of the evidence for termination, the Montana statute was amended after this Court decided *A.N.* and leaves no doubt that the evidence must include the expert's opinion that serious emotional or physical damage to the children will result if they are left in the parent's custody. Section 41-3-609(5), MCA. "The evidence must show the causal relationship between the conditions that exist and the damage that is likely to result." ICWA Guidelines, 44 Fed. Reg. at 67593, § D.3.c. Fisher's testimony fell short of this standard.

¶31 Finally, Mother argues that the State failed to demonstrate that it made "active efforts" to prevent the breakup of the Indian family. 25 U.S.C. § 1912(d) provides:

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

We have clarified that the State must demonstrate beyond a reasonable doubt that active efforts were made to prevent the breakup of the Indian family. *In the Matter of G.S.*, 2002 MT 245, ¶ 33, 312 Mont. 108, 59 P.3d 1063; *D.S.B.*, ¶ 15. We observed in *G.S.* that a "[c]ommon sense construction of the meaning of 'active efforts' requires only that 'timely affirmative steps be taken to accomplish the goal which Congress has set: to avoid the breakup of Indian families whenever possible by providing services [designed]

14

to remedy problems which might lead to severance of the parent-child relationship.' "
*G.S.*, ¶ 36 (quoting *Letitia v. Super. Ct.*, 81 Cal. App. 4th 1009, 1016 (Cal. App. 2000)).
In meeting this "heightened responsibility," the State "cannot simply wait for a parent to complete a treatment plan." *T.W.F.*, ¶ 27. Nor does placement with a family member automatically satisfy the standard. Courts have held that "placement is a separate issue from active efforts, and that the two issues must be analyzed separately. The exception to that rule — under which a placement decision may be relevant to an active efforts analysis — applies when a child's placement directly impacts a parent's ability to participate in remedial efforts." *Thea G. v. State*, 291 P.3d 957, 963 (Alaska 2013); *see also David S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 270 P.3d 767, 780 (Alaska 2012) ("[P]lacement decisions present a separate analytical question from termination decisions."); *In re A.A.*, 167 Cal. App. 4th 1292, 1318 (Cal. App. 2008) ("ICWA and . . . California's statutory law address the issue of an Indian child's placement separately from the issue of active efforts. Following their lead, we distinguish the issue of placement from that of active efforts.").

¶32     In this case, the State's implementation of a safety plan to maintain a trial home visit at the maternal grandmother's house demonstrated an effort to prevent breakup of the Indian family. Its presentation at the termination hearing, however, focused on the standards for termination under Montana law; neither the State nor the court in its findings of fact and conclusions of law expressly addressed whether ICWA's heightened standard for active efforts was met.

15

¶33 Because we are reversing for a new termination hearing, the State will have the opportunity to further develop the record regarding "active efforts" that were made and the court's findings of fact should address those efforts. As we have held, the court also may consider "a parent's demonstrated apathy and indifference to participating in the treatment." *A.N.*, ¶ 23. Here, while the court's findings of fact and conclusions of law properly contain detailed information about Mother's repeated failures, the court did not address the Department's active efforts to provide services and programs aside from finding that the State developed a treatment plan tailored to address Mother's chemical dependency problem.

¶34 In conclusion, our review of the record reveals that the termination proceedings did not comply with the mandates of ICWA and its parallel state provisions. Mother and the Tribe should have received notice of the petition for termination at least ten days in advance of the termination hearing, but the record does not substantiate that they did. 25 U.S.C. § 1912(a). At the termination hearing, the ICWA expert was required to testify as to whether Mother's continued custody was "likely to result in serious emotional or physical damage to the child[ren]," but she did not. 25 U.S.C. § 1912(f); § 41-3-609(5), MCA. The State was required to satisfy the District Court that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful," but the District Court's termination order does not discuss which, if any, "active efforts" were made. 25 U.S.C. § 1912(d). ICWA sets minimum federal standards for proceedings

16

involving Indian children, and we are compelled to make sure its requirements are followed. 25 U.S.C. § 1902.

¶35 Accordingly, we reverse the District Court's termination order and remand the case for the purpose of holding a new termination hearing. Because we reverse, we do not reach Mother's argument that she received ineffective assistance of counsel.


/S/ BETH BAKER


We concur:

/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JIM RICE