DA 12-0532

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 60

IN THE MATTER OF:

M.J.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDN-12-030
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Elizabeth Thomas, Attorney at Law, Missoula, Montana

    For Appellee:

    Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

    Theresa L. Diekhans, Child Protection Unit, Great Falls, Montana

    John Parker, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:    February 13, 2013

Decided:    March 5, 2013

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 O.J., M.J.'s mother, appeals the order entered by the Eighth Judicial District Court, Cascade County, finding M.J. to be a youth in need of care and granting custody of M.J. to M.J. Sr., M.J.'s father. We affirm.

¶2 O.J. raises the following issues on appeal:

¶3 1. Did the District Court err in finding the child a youth in need of care?

¶4 2. Did the District Court err when it dismissed the abuse and neglect proceeding and granted custody to the father under § 41-3-438(3)(d), MCA?

**Factual and Procedural Background**

¶5 M.J. was born with numerous medical issues and hospitalized for the first three months of his life. M.J. suffers from liver disease, gastric reflux disease, cycocel trite, cloudy corneas, a partial occipital infarct, hearing and visual impairments, seizures, and brain damage. The suspected cause of M.J.'s medical problems was maternal drug use. At the time of M.J.'s birth, O.J. tested positive for methamphetamine. While O.J. denied methamphetamine use despite the test result, O.J. admitted to marijuana use during the pregnancy.

¶6 In addition to being treated in Great Falls, Montana, M.J. has seen a pediatric eye specialist and a gastrointestinal specialist in Billings, Montana, and has been transported to a neo-ICU unit in Seattle, Washington, for treatment, and later to a Seattle hospital for a biopsy of his liver. M.J.'s prognosis is guarded and M.J. will require ongoing pediatric specialty care beyond what is available in Montana. M.J. will need a parent who can

provide constant care and has training by medical professionals in understanding how to care for M.J.

¶7 Concerns arose when M.J. was scheduled to be discharged approximately three months after birth. O.J. had not been consistently visiting M.J. and she had indicated that she would not seek follow up medical care for M.J. O.J. was defiant to hospital staff and nurse directives and would not provide her home address to the hospital. When O.J. finally provided her address, she could not be located by Child Protective Service workers, nor could she be reached by phone. M.J. was released into M.J. Sr.'s care the following day.

¶8 On April 9, 2012, the Department of Public Health and Human Services (Department) filed a Petition for Emergency Protective Services, Adjudication as Youth in Need of Care and Temporary Legal Custody. The District Court granted the Department temporary protective services and set a show cause hearing on the Department's petition for June 26, 2012.

¶9 O.J. did not appear at the show cause hearing. O.J.'s counsel represented that he had no contact with O.J. The Department indicated that until two weeks prior to the hearing, they had kept in good contact with O.J. O.J.'s counsel acknowledged that O.J. waived her right to contest the show cause hearing as O.J. had not filed a response to the petition; however, counsel objected to the District Court adjudicating M.J. a youth in need of care. M.J. Sr. was present for the show cause hearing, waived his right to a hearing, and stipulated to a finding that M.J. was a youth in need of care. M.J. Sr. wanted the case to move quickly so M.J.'s medical needs could be addressed. M.J. Sr. is an

3

airman in the Air Force. He wanted to obtain custody of M.J. so that he could transfer to a location with medical facilities that could address M.J.'s needs. The District Court set an adjudicatory and dispositional hearing for July 24, 2012.

¶10 At the July 24, 2012 hearing, O.J. appeared with counsel. O.J.'s counsel requested a continuance, representing that he had only met O.J. moments before the hearing. M.J. Sr. appeared and again expressed his desire to have things move quickly so he could transfer to an air base with better medical facilities. The District Court reset the adjudication and dispositional hearing for August 7, 2012.

¶11 O.J. failed to appear at the August 7, 2012 hearing. The court conducted the hearing and received testimony from Dr. Deborah Garrity, M.J.'s treating physician; Child Protective Specialist Anne Sinnott; and M.J. Sr. Sinnott described the Department's efforts to assist O.J. in her parenting of M.J. Specifically, Sinnott related that O.J. never progressed beyond supervised visits with M.J. because O.J. failed to appreciate the magnitude of M.J.'s medical needs. O.J. disagreed with the opinions of medical staff and did not understand why the Department had to be involved. Sinnott explained that O.J. had not attempted to really understand M.J.'s issues and what it would take to parent M.J. Examples of O.J.'s inability to follow medical directives were O.J. refusing to leave M.J. in the incubator, and refusing to wear a hospital gown.

¶12 Dr. Garrity and Sinnott described M.J. Sr.'s involvement with M.J. as very good. M.J. Sr. followed medical staff directions, understood the demands parenting M.J. would require, and displayed competency in dealing with both M.J.'s medical issues and receiving the necessary medical training. M.J. Sr. explained to the District Court that

4

granting custody of M.J. to M.J. Sr. was necessary for M.J. Sr. to be granted a transfer to an air base with appropriate medical facilities. Dr. Garrity concurred that M.J.'s survival depended on appropriate medical services, and that Montana could not provide the type of medical care M.J. needed. Sinnott also believed M.J. Sr. had demonstrated he could appropriately parent M.J. and provide for M.J.'s medical needs.

¶13 At the conclusion of the adjudicatory hearing, the District Court found, based upon a preponderance of the evidence, that M.J. was a youth in need of care. The District Court next conducted a disposition hearing, and again Dr. Garrity and Sinnott testified. Dr. Garrity testified to the best interests of M.J. as follows:

> I am completely comfortable with recommending that [M.J.'s] dad be the primary caretaker of this baby. He's presented himself to be a complete class act in taking care of this complicated baby from the first day I met him. He's been responsive to any suggestions we have as far as getting him to appointments or things to do to help care for this baby. And so it's my opinion that [M.J.] Sr. be made the primary parent for this baby.

¶14 Dr. Garrity testified that it is in the best interest of M.J. to live in Arizona with M.J. Sr. where he can receive adequate medical care. Sinnott concurred in this recommendation, as did the appointed guardian ad litem. The guardian ad litem believed the District Court should grant custody to M.J. Sr. because the Air Force was willing to assign M.J. Sr. to an air base that had a major medical center that could properly care for M.J. Based upon this testimony, the District Court dismissed the petition and awarded custody of M.J. to M.J. Sr. O.J. appeals.

**Standard of Review**

5

¶15 The parties have articulated different standards of review in their briefs. O.J. has set forth an abuse of discretion standard citing *In re K.J.B.*, 2007 MT 216, ¶ 22, 339 Mont. 28, 168 P.3d 629, and *In re V.F.A.*, 2005 MT 76, ¶ 6, 326 Mont. 383, 109 P.3d 749. The State argues that this Court should review a district court's findings of fact to determine if they are clearly erroneous and conclusions of law to determine if they are correct. *In re A.R.*, 2005 MT 23, ¶ 15, 326 Mont. 7, 107 P. 3d 457.

¶16 We recently addressed the standard of review to apply in youth in need of care proceedings in *In re K.H.*, 2012 MT 175, 366 Mont 18, 285 P.3d 474, and noted that the "standard of review does not depend on whether the district court grants or denies a petition to adjudicate a youth in need of care." *K.H.*, ¶ 19. The standard of review was explained as follows:

> We review a district court's decision to terminate parental rights to determine whether the court abused its discretion. We review a district court's specific findings to determine whether they are clearly erroneous. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence or if, upon reviewing the record, this Court is left with the definite and firm conviction that the district court made a mistake. In reviewing a district court's conclusions of law, we determine if they are correct.

*K.H.,* ¶ 19 (citing *In re E.K.*, 2001 MT 279, ¶ 31, 307 Mont 328, 37 P.3d 690). Thus, we review the district court's findings for clear error, its conclusions of law for correctness, and the court's ultimate decision regarding adjudication and disposition for abuse of discretion.

¶17 A court abuses its discretion when it acts "arbitrarily, without employment of conscientious judgment or in excess of the bounds of reason, resulting in substantial

6

injustice." *K.H.*, ¶ 19 (citing *In re A.J.W.*, 2010 MT 42, ¶ 12, 355 Mont. 264, 227 P.3d 1012; *In re C.J.K.*, 2005 MT 67, ¶ 13, 326 Mont. 289, 109 P.3d 232). Further, "[t]his Court does not substitute its judgment for that of the trial court regarding the credibility or weight to be given to the evidence, nor does this Court review the record to determine whether evidence would support a different finding." *K.H.*, ¶ 19 (citing *In re I.B.*, 2011 MT 82, ¶ 36, 360 Mont. 132, 255 P.3d 56; *K.J.B.*, ¶ 23).

**Issue 1.**

¶18    *Did the District Court err in finding the child a youth in need of care?*

¶19    In order to adjudicate a child a youth in need of care, the State must prove, by a preponderance of the evidence, that the child has been abused, neglected or abandoned. Section 41-3-437(2), MCA; *I.B.*, ¶ 20; *In re B.S.*, 2009 MT 98, ¶ 22, 350 Mont. 86, 206 P.3d 565.

¶20    O.J. argues that the record does not support a determination that she had minimal involvement with M.J. or that she was unwilling to learn what was required to care for M.J. The District Court, however, found that O.J. abused and neglected M.J. by using drugs during her pregnancy, and that her drug use could have led to the medical complications and special needs of M.J. This was based upon the testimony of Dr. Garrity that the suspected cause of M.J.'s medical problems was maternal drug use. Clearly the origins of M.J.'s medical problems could not definitively be established. However, the use of methamphetamines and marijuana during pregnancy, facts which are supported by a preponderance of the evidence, is evidence of O.J.'s neglect regardless of a definitive correlation being made to M.J.'s medical problems.

¶21 The District Court also found that O.J. failed to appreciate the severity of M.J.'s medical needs and that O.J. was unwilling to learn what was required to care for M.J. Substantial evidence from the adjudicatory hearing exists to support these factual findings. Further, the District Court did not abuse its discretion in finding M.J. a youth in need of care. To the contrary, the District Court employed appropriate discretion in considering competing arguments and making a determination which was supported by the evidence. The record supports the District Court's finding that M.J. was a youth in need of care. O.J. has failed to show that the finding is clearly erroneous or that the District Court abused its discretion in granting the petition.

### Issue 2.

¶22 *Did the District Court err when it dismissed the abuse and neglect proceeding and granted custody to the father under § 41-3-438(3)(d), MCA?*

¶23 A district court has several dispositional options once a child is found to be a youth in need of care. Those options are set forth in § 41-3-438, MCA. The provision invoked in the instant proceedings was § 41-3-438(3)(d), MCA. It provides in pertinent part:

> (3) If a child is found to be a youth in need of care under 41-3-437, the court may enter its judgment, making any of the following dispositions to protect the welfare of the child:
>
> . . .
>
> (d) order the placement of the child with the noncustodial parent, superseding any existing custodial order, and dismiss the proceeding with no further obligation on the part of the department to provide services to the parent with whom the child is placed or to work toward reunification of the child with the parent or guardian from whom the child was removed in the initial proceeding. . . .

8

Section 41-3-438(3)(d), MCA.

¶24    O.J. argues that the District Court abused its discretion in placing M.J. out of state. Such a placement, O.J. argues, inhibits her abilities to parent and maintain a continuing relationship with M.J.  O.J. argues that it is in the best interests of M.J. to maintain a relationship with his mother.

¶25    The District Court was presented with a situation where an infant arguably would not even survive if medical care at a different facility were not secured.  Fortunately, M.J. Sr. had the ability to relocate to another air base which would allow access to more advanced medical care and thereby improve M.J.'s chance of survival.  The District Court determined that O.J. was unwilling to learn how to care for M.J. or take steps to improve her ability to properly parent M.J.  O.J. did not even attend the adjudication and disposition hearing for her child.  The record clearly demonstrates that the District Court properly considered the welfare of M.J., and made a conscious, deliberate decision in awarding custody of M.J. to his father.  Further, as the District Court dismissed the petition, and thereby terminated the Department's involvement in these proceedings, the proper forum for O.J. to challenge custody of M.J. is in a parenting plan action. *In re S.S.*, 2012 MT 78, ¶ 17, 364 Mont. 437, 276 P.3d 883.

¶26    Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS

9