DA 16-0483

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 85N

IN THE MATTER OF:

G.S. and A.S.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause Nos. DN 15-242 and
DN 15-256
Honorable Ingrid Gustafson, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Shannon Hathaway, Montana Legal Justice, PLLC, Missoula, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Madison L. Mattioli,
Assistant Attorney General, Helena, Montana

        Scott D. Twito, Yellowstone County Attorney, Billings, Montana

               Submitted on Briefs:  February 1, 2017

                     Decided:  April 11, 2017

Filed:

                                Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      M.S. (Mother) appeals the Thirteenth Judicial District Court's termination of her parental rights to G.S. and A.S. We affirm.

¶3      Mother and D.S. (Father) are the biological parents of minor children G.S. and A.S. G.S. is currently four years old and A.S. is twenty-two months old. Mother and Father are also the parents of twins, Z.L.S. and D.P.S., born in 2012. The State asserts that Mother and Father are the parents of J.L., born in 2014, as well. Mother denies giving birth to J.L. but DNA testing shows Mother and Father are the natural parents of G.S. and A.S. and that the DNA of J.L., G.S., and A.S. are a 99 percent match. J.L. was abandoned at a hospital when he was nine days old and has lived in foster care since that time. The hospital took a photograph of the woman who left him at the hospital and it was later confirmed to be Mother, although she identified herself as someone else at the time.

¶4      Between 2000 and 2010, Mother gave birth to four other children with four different fathers. Mother's rights to those four children, as well as her rights to Z.L.S. and D.P.S., were terminated involuntarily through multiple proceedings between 2003 and 2013. Father's rights to Z.L.S. and D.P.S. were terminated in 2013 as well.

¶5 On July 7, 2015, after receiving a report regarding the welfare of children living with Mother and Father, a Child Protective Specialist (CPS) with the Department of Public Health and Human Services (DPHHS or Department) Child and Family Services Division (CFSD) made an unannounced visit to their home. The CPS learned during this visit that both G.S. and infant A.S. had been born at home without medical or midwife assistance. Neither child had a birth certificate[1] or Social Security number nor had they received recommended immunizations. A.S. had not seen a doctor since her birth a few weeks earlier. As both parents were known to the Department as drug users, the CPS asked the parents to submit to drug testing. Father agreed and tested positive for amphetamine and methamphetamine. Mother refused to be tested.

¶6 Based upon the unsafe conditions of the home, Father's positive drug test, and the parents' past terminations, the children were taken into emergency protective custody and placed into kinship care with their twin siblings, Z.L.S. and D.P.S. G.S. and A.S. were adjudicated as youths in need of care in July 2015. Following multiple delays, multiple hearings, and the short-term incarcerations of both parents, in March 2016 DPHHS filed an amended petition based upon § 41-3-423(2)(e), MCA, seeking a ruling that the Department was not required to provide reunification services. It indicated that it was seeking permanent legal custody and termination of parental rights to all three children: G.S., A.S. and J.L.

---

[1] DPHHS obtained birth certificates for both children after parents' DNA testing confirmed that they were the natural parents.

¶7 Following a May 2016 hearing, the District Court issued its July 20, 2016 order determining that reunification services were not necessary, terminating the parental rights of both parents and granting permanent legal custody to DPHHS with the right to consent to adoption or guardianship of G.S., A.S., and J.L.

¶8 Mother appeals the orders pertaining to G.S. and A.S. Father does not appeal.

¶9 We review a district court's termination of parental rights for an abuse of discretion. *In re J.W.*, 2013 MT 201, ¶ 25, 371 Mont. 98, 307 P.3d 274. A district court abuses its discretion when it acts "arbitrarily, without employment of conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice." *In re M.J.*, 2013 MT 60, ¶ 17, 369 Mont. 247, 296 P.3d 1197. We review a district court's factual findings for clear error. *In re A.K.*, 2015 MT 116, ¶ 20, 379 Mont. 41, 347 P.3d 711. We review a district court's application of law for correctness. *In re K.B.*, 2013 MT 133, ¶ 18, 370 Mont. 254, 301 P.3d 836 (internal citations omitted).

¶10 Mother argues on appeal that the District Court abused its discretion when it interpreted and applied § 41-3-423(2)(e), MCA, and found that the circumstances related to her prior involuntary parental rights terminations were relevant to her present ability to parent G.S. and A.S.

¶11 Section 41-3-609, MCA, sets forth the criteria for terminating the "parent-child legal relationship." Section 41-3-609(1)(d), MCA, authorizes a court to terminate a parent's rights if "the parent has subjected a child to any of the circumstances listed in 41-3-423(2)(a) through (2)(e)."

¶12    Section 41-3-423, MCA, requires the Department to make reasonable efforts, among other things, to reunify families that have been separated by the State.  The statute provides exceptions, however.  Section 41-3-423(2)(e), MCA, provides, in relevant part:

> (2)  Except in a proceeding subject to the federal Indian Child Welfare Act, the department may, at any time during an abuse and neglect proceeding, make a request for a determination that preservation or reunification services need not be provided. . . .  A court may make a finding that the department need not make reasonable efforts to provide preservation or reunification services if the court finds that the parent has:
>
> .  .  .
>
> (e)  had parental rights to the child's sibling or other child of the parent involuntarily terminated and the circumstances related to the termination of parental rights are relevant to the parent's ability to adequately care for the child at issue.

¶13    Mother does not dispute that her rights to six previous children were involuntarily terminated.  She asserts that the State failed to establish that the circumstances related to her earlier terminations are relevant to her current ability to adequately care for the children.  She maintains that she has been drug-free for several years but for two "relapses."  She claims that she is willing to undergo drug testing and undertake a treatment plan.  The record establishes, however, that while Mother agrees to drug testing, she has refused every attempt the Department has made since July 2015.  The State maintains this is evidence that Mother continues to be uncooperative with the services provided by DPHHS just as she was with the other six terminations.

¶14    During the multiple hearings and filings in this case, the State established that: (1) the condition of Mother and Father's home was unsuitable and unsafe for children due, in part, to large quantities of chemicals and cleaning supplies being accessible to the

5

children; (2) at the time G.S. was removed from the house, a hair follicle test revealed "high levels of methamphetamine"; (3) two months after A.S. was removed from the home, and DPHHS was able to obtain a sufficient hair sample from the infant, A.S.'s hair follicle test revealed high levels of methamphetamine; (4) Mother repeatedly refused drug testing and refused to undergo a required psychological assessment; (5) Mother refused to sign releases allowing DPHHS to access records of counseling attendance and refused to see a licensed counselor as required by DPHHS; and (6) Mother and Father kidnapped G.S. and A.S. after a visitation session and were subsequently captured, arrested, and incarcerated. Mother also was awaiting further criminal proceedings on a charge of possession of methamphetamine.

¶15   Additionally, the State presented evidence from Mother's past termination proceedings, including, but not limited to:   (1) Mother's long-term use of methamphetamine; (2) Mother's failure to make good decisions concerning her children and to provide a safe environment; and (3) her consistent refusal to take *all* of the actions necessary to work the required treatment plans designed to achieve reunifications. DPHHS representatives familiar with Mother's case history testified that throughout this proceeding involving G.S. and A.S., and the previous termination proceedings, Mother was (1) uncooperative with the services offered by DPHHS, participating in services solely on her terms or not at all; (2) unable or unwilling to stabilize her environment and learn parenting skills to provide for the physical, emotional, and medical needs of her children; (3) unable or unwilling to establish her sobriety; and (4) unwilling to undertake and perform the necessary actions to successfully complete a treatment plan. The District Court correctly

6

ruled that the circumstances related to the terminations of Mother's rights in earlier proceedings were relevant to her ability to adequately care for G.S. and A.S.

¶16    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the District Court's findings of fact are not clearly erroneous. Its interpretation and application of the law are correct and the court's ruling was not an abuse of discretion.

¶17    We affirm.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE