FILED

08/15/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0081

DA 17-0081

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 202N

IN THE MATTER OF:

M.RC.,

     A Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADN 15-199
Honorable Greg Pinski, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Julie Brown, Montana Legal Justice, PLLC, Missoula, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

        Carey Ann Haight, Cascade County Attorney, Valerie M. Winfield,
Deputy Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  July 26, 2017

Decided:  August 15, 2017

Filed:

                    _____
                            Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 R.CC. (Mother) appeals the findings of fact, conclusions of law, and order of the Eighth Judicial District Court, Cascade County, terminating her parental rights to her infant daughter, M.RC. We address whether the District Court abused its discretion in terminating Mother's parental rights. We affirm.

¶3 In July 2015, the Department of Health and Human Services (DPHHS) petitioned for emergency protective services, adjudication as a youth in need of care, and temporary legal custody (TLC) of M.RC., born in April 2015, after concerns arose that the she was being physically neglected. On July 10, 2015, law enforcement arrested E.RC. (Father) for child endangerment after he tried to run from officers and left M.RC. behind. Father was acting erratically and intoxicated, and was later determined to have a blood alcohol concentration of 0.236. Mother was also incarcerated that day when she was found intoxicated while caring for M.RC. The parents had recently relocated to Great Falls and had no established residence. Mother is an enrolled member of the Kainai-Blood Tribe of Canada, Father is an enrolled member of the Blackfeet Tribe, M.RC. is eligible for enrollment with the Blackfeet Tribe and, therefore, an Indian Child under the Indian

2

Child Welfare Act (ICWA). 25 U.S.C. § 1903(4). DPHHS notified both Tribes of the proceedings, and neither intervened or sought to transfer jurisdiction to Tribal Court.

¶4 At the September 2015 show cause hearing, neither parent appeared and the District Court adjudicated M.RC. as a youth in need of care. At the October 2015 dispositional hearing, the District Court ordered a treatment plan for Mother, with no objections. In April 2016, the District Court extended TLC after neither parent had yet to engage in his or her treatment plan. TLC was extended again in October 2016 when DPHHS filed a petition to terminate parental rights (TPR) and permanent legal custody and neither parent appeared for the TPR hearing.

¶5 On January 4, 2017, the District Court held the TPR hearing, at which neither parent appeared personally, but both were represented by counsel. In support of the TPR petition, the State presented testimony from Child Protection Specialist (CPS) Adrianne Weaselhead, ICWA Expert Anne Fisher, Licensed Addiction Counselor (LAC) Nathan Stewart, LAC Julie Messerly, and Licensed Clinical Professional Counselor Bobbie Voegel. On January 9, 2017, the District Court granted the State's petition for TPR, issuing its findings of fact, conclusions of law, and order.

¶6 CPS Weaselhead testified she tried to set up random UA testing, parenting classes, and chemical dependency evaluations for Mother. Mother only completed a fraction of her required UA tests, and the ones she submitted tested positive for Benzodiazepines, Methamphetamine, Amphetamine, and other drugs. Neither Mother nor Father initiated parenting classes with Discovery Family Counseling Services. Stewart testified that Mother described her extensive substance abuse history and previous failed chemical

3

dependency treatments at her chemical dependency evaluation. Stewart recommended medically monitored inpatient treatment, partly because of Mother's high probability of abusing alcohol, cannabis, and opioids. Stewart also testified that while Mother admitted she had a substance abuse problem, she did not believe she needed inpatient treatment, which indicated she was not fully committed to addressing her chemical dependency issues. Mother appeared for three group sessions, but otherwise did not engage in chemical dependency treatment. Mother told CPS Weaselhead in the spring of 2016 she attended inpatient chemical dependency treatment at Crystal Creek, however, after six weeks and against staff recommendations, Mother left treatment. In the fall of 2016, Mother stated she was receiving services in Browning and did not need DPHHS to make referrals. Mother failed to fill out a release of information for CPS Weaselhead to confirm any of her alleged treatment.

¶7 Fisher, an IWCA expert, testified that DPHHS's efforts to reunify M.RC. with the birth parents were not successful, and that continued custody of M.RC. by the birth parents would likely result in serious emotional or physical damage to M.RC. Fisher also testified regarding Tribal preference for guardianship or customary adoptions over the permanent termination of parental rights. CPS Weaselhead testified to coordinating with the Blackfeet Tribe to secure a kinship placement for M.RC., but after sending approximately 50 letters, no qualified family member came forward and the Tribe advised her there was no possible kinship or Tribal placement available at the time.

¶8 We review a district court's decision to terminate parental rights for abuse of discretion. *In re K.B.*, 2013 MT 133, ¶ 18, 370 Mont. 254, 301 P.3d 836. A district court

abuses its discretion when it acts "arbitrarily, without employment of conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice." *In re M.J.*, 2013 MT 60, ¶ 17, 369 Mont. 247, 296 P.3d 1197. We review a district court's factual findings for clear error. *In re A.K.*, 2015 MT 116, ¶ 20, 379 Mont. 41, 347 P.3d 711. A factual finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if review of the record convinces this Court a mistake was made. *In re C.J.M.*, 2012 MT 137, ¶ 10, 365 Mont. 298, 280 P.3d 899. We review a district court's application of law for correctness. *K.B.*, ¶ 18 (internal citations omitted). In ICWA cases, we will uphold the district court's termination of parental rights if a reasonable fact-finder could conclude beyond a reasonable doubt that allowing the parent to continue custody would likely "result in serious emotional or physical damage to the child." *K.B.*, ¶ 18.

¶9 Mother argues that the State did not provide proof beyond a reasonable doubt to terminate her rights under the heightened ICWA standard, and that the District Court abused its discretion in finding that Mother's condition was unlikely to change in a reasonable time. The State argues the record reflects evidence beyond a reasonable doubt that supports the District Court's findings and conclusions that DPHHS made active efforts to prevent the breakup of this Indian family. The State also argues the evidence demonstrates beyond a reasonable doubt that Mother's condition rendering her unfit to parent was unlikely to change in a reasonable time. "In determining whether the conduct or condition of a parent is unlikely to change within a reasonable time [as required under § 41-3-609(1)(f)(ii), MCA], the court shall enter a finding that continuation of the

parent—child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA. When determining whether a parent's conduct is unlikely to change within a reasonable time, the district court "should assess a parent's past and present conduct." *In re D.H.*, 2001 MT 200, ¶ 32, 306 Mont. 278, 33 P.3d 616. Evidence beyond a reasonable doubt, including testimony from CPS Weaselhead, Stewart, and Fisher, supported the District Court's decision that Mother completely failed her treatment plan, that Mother was unlikely to change within a reasonable time, and that it was in M.RC.'s best interest for Mother's parental rights to be terminated. The record clearly reflects Mother's lack of engagement in her treatment plan and her unwillingness to address her chemical dependency issues, despite CPS Weaselhead's active efforts to provide services. Mother failed to maintain regular contact with CPS Weaselhead, her chemical dependency counselor, and even her attorney.

¶10    Pursuant to ICWA § 1912(d), when seeking foster placement or termination of parental rights to an Indian child, the State "shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d). The burden of proof required to establish active efforts were made is beyond a reasonable doubt. *In re G.S.*, 2002 MT 245, ¶ 33, 312 Mont. 108, 59 P.3d 1063. "[A]ctive efforts" requires DPHHS do more than simply give a parent a treatment plan and wait for her to complete it. *In re J.S.*, 2014 MT 79, ¶ 25, 374 Mont. 329, 321

6

P.3d 103. "[I]n determining whether the state had made active efforts . . . a court may consider a parent's demonstrated apathy and indifference to participating in treatment." *In re A.N.*, 2005 MT 19, ¶ 23, 325 Mont. 379, 106 P.3d 556. Evidence beyond a reasonable doubt supported the District Court's findings and conclusions that DPHHS made active efforts to connect Mother with services and Mother's apathy and indifference to treatment. CPS Weaselhead repeatedly offered services to Mother that she refused, including her initial chemical dependency evaluation where a CPS located Mother and took her to the appointment after she said she could not make it. DPHHS also provided bus passes to enable the parents to get to UA testing and other appointments.

¶11 Mother argues the District Court did not terminate her parental rights in accordance with the best interest of the Indian child under ICWA. The State argues that ICWA promotes maintaining relationships between Indian children and their Tribes through placement preferences, but ICWA does not presume that termination of parental rights is not in an Indian child's best interest, as Mother contends. We agree. Mother's argument seeks to expand the premise of *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 52, n. 24, 109 S. Ct. 1597, 1610 (1989), which holds that the "fundamental assumption [of ICWA is] that it is in the Indian child's best interest" to protect the Indian child's "relationship to the tribe." Protecting the Indian child's relationship with her Tribe is not equivalent to presuming a parent's rights should not be terminated.

¶12 Finally, Mother argues the District Court violated her right to procedural due process by issuing inadequate and erroneous findings of fact and conclusions of law. The State argues whether a court issued erroneous findings, or made incorrect conclusions of law are distinct questions and not akin to whether a parent was afforded fundamentally fair procedures. The State contends Mother's "due process" argument inappropriately melds her direct appeal of the District Court's findings of fact and conclusions of law into an alleged constitutional violation without any legal authority to support such a complex legal theory. We agree. "A parent's right to the care and custody of a child is a fundamental liberty interest that must be protected by fundamentally fair procedures." *A.K.*, ¶ 20. "Key components of a fair proceeding are notice and an opportunity to be heard." *In re C.J.*, 2010 MT 179, ¶ 27, 357 Mont. 219, 237 P.3d 1282 (citation omitted). Mother was afforded notice of the proceedings, she was given several opportunities to be heard at multiple hearings at which she failed to voluntarily appear, and the District Court issued detailed findings and conclusions, satisfying its statutory requirement.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's findings of fact are not clearly erroneous, its conclusions of law are correct, and its ruling was not an abuse of discretion. We affirm.

/S/ JAMES JEREMIAH SHEA

8

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE