DA 20-0015

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 203N

IN THE MATTER OF:

J.C.S. and J.C.S.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDN 17-308
Honorable John W. Parker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Shannon Hathaway, Montana Legal Justice, PLLC, Missoula, Montana

      For Appellee:

      Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

      Joshua A. Racki, Cascade County Attorney, Mercedes Oxford-Kemp,
Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  July 22, 2020

Decided:  August 11, 2020

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 E.E.S. (Father) appeals the orders of the Eighth Judicial District Court, Cascade County, terminating his parental rights to his minor children, J.C.S. (Son) and J.C.S. (Daughter) (collectively, "Children"). We address: (1) Whether the District Court erred when it concluded that Father was unlikely to change in a reasonable amount of time pursuant to § 41-3-609(1)(f), MCA; and (2) Whether the District Court erred when it terminated the Father's parental rights when the State of Montana, Department of Public Health and Human Services (Department) failed to provide reasonable efforts to reunify Father with the Children. We affirm.

¶3 In August 2017, the Department and law enforcement began investigating reports that while the Children were in the care of Father, Father was abusing and selling prescription drugs, trafficking Daughter for sex, and talking about taking baths with Daughter. At the time, Son was thirteen years old and Daughter was six years old.

¶4 Department Child Protection Specialists (CPS), accompanied by law enforcement, responded with a search warrant for the home. While executing the search warrant, law enforcement encountered five doors locked with deadbolts before locating Father, S.C.S. (Mother), the Children, and a cousin, B.B. Law enforcement also found a needle

2

with an unknown substance in the home. CPS observed and photographed the poor sanitation of the home and hazards from the cluttered condition of the home.

¶5 During an interview with CPS and law enforcement, Father disclosed that he knew of Mother's severe mental health issues and drug abuse but denied understanding how those issues impacted the Children's safety and well-being. Father denied knowledge of the needle found in the home during the search and denied any sexual abuse of the Children. CPS collected a hair sample from Father, which later tested positive for the presence of methamphetamine.

¶6 Due to the drug concerns and allegations of child sex trafficking, the Department removed the Children from the home. Son was hospitalized shortly thereafter due to suicidal ideations and untreated schizophrenia.

¶7 On September 7, 2017, the Department filed petitions for emergency protective services, adjudication as youths in need of care, and temporary legal custody of Son and Daughter.[1] On October 3, 2017, the District Court conducted a show cause and adjudicatory hearing on the petitions. Father appeared at the hearing with appointed counsel and stipulated to probable cause for the filing of the petitions and adjudication of the Children as youths in need of care.

¶8 On October 31, 2017, the District Court conducted a dispositional hearing and adopted the Department's proposed treatment plan for Father. Father appeared at the

---

[1] The petitions also alleged that the Children were Indian Children for purposes of the Indian Child Welfare Act (ICWA). The Blackfeet Tribe confirmed the Children were descendants of the Tribe but were ineligible for enrollment because they did not satisfy blood quantum requirements. Thus, ICWA does not apply.

hearing with appointed counsel and stipulated to the proposed treatment plan. Father's treatment plan requirements included completing a parenting assessment and in-home parenting program; attending supervised visitations with the Children; maintaining a safe and stable residence for the Children that meet minimal requirements for cleanliness and sanitation; obtaining prior Department approval before allowing other people into the residence; complying with the Children's medical and educational needs; and submitting to chemical dependency and psychological evaluations and completing any follow-up recommendations.

¶9 Temporary legal custody was extended two additional times. Permanency plans were presented and approved by the District Court.

¶10 At a status hearing held on February 26, 2019, the Department informed the District Court that Father was incarcerated at the Cascade County Detention Center on numerous sex offense charges, including child sexual abuse.

¶11 On May 29, 2019, the Department petitioned for permanent legal custody and termination of Father's parental rights based on Father's failure to complete his court-ordered treatment plan. On November 12, 2019, the District Court held a termination hearing at which Father appeared with appointed counsel. After the hearing, the District Court issued a written order terminating Father's parental rights to the Children. The District Court found and concluded by clear and convincing evidence that: 1) Father was engaged with the Department but was unable to adequately address the issues that led to the Department's involvement; 2) Father had not completed his treatment plan and the portions that were attempted were inadequate to address the Department's ongoing

4

concerns; 3) Father's conduct and condition rendering him unfit was unlikely to change within a reasonable time due to his failure to complete his treatment plan "as demonstrated by repeated Department involvement for the same identified safety issues"; 4) continuation of the parent-child legal relationship would likely result in ongoing abuse or neglect given Father's failure to address the issues that led to the Department's involvement; and 5) the best interests of the Children's physical, mental, and emotional conditions would be served by terminating Father's parental rights and granting the Department permanent legal custody of the Children.

¶12    We review a district court's decision to terminate parental rights for an abuse of discretion. *In re C.M.G.*, 2020 MT 15, ¶ 10, 398 Mont. 369, 456 P.3d 1017; *In re C.M.*, 2019 MT 227, ¶ 13, 397 Mont. 275, 449 P.3d 806; *In re M.J.*, 2013 MT 60, ¶ 16, 369 Mont. 247, 296 P.3d 1197; *In re K.B.*, 2013 MT 133, ¶ 18, 370 Mont. 254, 301 P.3d 836. A district court abuses its discretion when it acts "arbitrarily, without employment of conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice." *In re M.J.*, ¶ 17. We review the district court's factual findings underlying its termination decision for clear error, and its application of the law to those facts for correctness. *In re C.M.G.*, ¶ 10; *In re A.K.*, 2015 MT 116, ¶ 20, 379 Mont. 41, 347 P.3d 711. A factual finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if review of the record convinces this Court that a mistake was made. *In re C.J.M.*, 2012 MT 137, ¶ 10, 365 Mont. 298, 280 P.3d 899.

¶13 A parent's right to the care and custody of a child is a fundamental liberty interest and must be protected by fundamentally fair procedures. *In re A.K.*, ¶ 20; *In re Matter of E.K.*, 2001 MT 279, ¶ 32, 307 Mont. 328, 37 P.3d 690. However, "[a] child's best interest takes precedence over parental rights." *In re A.K.*, ¶ 20.

¶14 A district court may terminate the parent-child legal relationship upon finding by clear and convincing evidence that the child is an adjudicated youth in need of care, that the parent has not completed or has not been successful with an appropriate court-ordered treatment plan, and the parent's conduct or condition rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f)(i)-(ii), MCA; *In re J.A.S.*, 2010 MT 47, ¶ 12, 355 Mont. 302, 288 P.3d 1119. Clear and convincing evidence requires that "a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof." *In re A.K.*, ¶ 22 (citations omitted). Clear and convincing evidence "does not call for unanswerable or conclusive evidence." *In re A.K.*, ¶ 22 (citations omitted).

¶15 Father argues that the District Court erred when it determined that he was unlikely to change in a reasonable amount of time pursuant to § 41-3-609(1)(f), MCA.

¶16 Under § 41-3-609(1)(f), MCA, "the question is not merely whether a parent has made progress or would make some progress in the future, but whether the parent is likely to make enough progress within a reasonable time to overcome the circumstances rendering her unfit to parent." *In re A.B.*, 2020 MT 64, ¶ 27, 399 Mont. 219, 460 P.3d 405. The court must "assess the past and present conduct of the parent."

6

*In re S.C.L.*, 2019 MT 61, ¶ 9, 395 Mont. 127, 437 P.3d 122 (citations omitted). The court will give "primary consideration to the physical, mental, and emotional conditions and needs of the child." *In re A.B.*, ¶ 24; § 41-3-609(3), MCA.

The Children were adjudicated as youths in need of care in October 2017, and reasonable treatment plans were ordered for Father within thirty days. Nearly two years after the Children were adjudicated as youths in need of care, Father was incarcerated pending trial on multiple felony charges involving allegations of child sexual abuse. His incarceration at this late stage in the proceedings became a major obstacle to achieving permanency, security, and stability in the Children's lives. Given the nature of Father's incarceration and the District Court's finding that the physical, mental, and emotional conditions and needs of the Children required imminent permanency and security, we hold the District Court did not err in determining Father's conduct or condition rendering him unfit to parent was unlikely to change in a reasonable amount of time pursuant to § 41-3-609(1)(f), MCA. ¶ 18. Father next argues that the District Court erred in terminating his parental rights after the Department failed to make the requisite reasonable efforts for reunification pursuant to § 41-3-423(1), MCA. "Reasonable efforts include but are not limited to voluntary protective services agreements, development of individual written case plans specifying state efforts to reunify families, . . . provision of services pursuant to a case plan, and periodic review of each case to ensure timely progress toward reunification . . . ." Section 41-3-423(1), MCA. Reasonable efforts are "not static or determined in a vacuum, but rather [are] dependent on the factual circumstances of each case—the totality of the circumstances—including a parent's apathy and/or disregard for

7

the Department's attempts to engage and assist the parent." *In re C.M.G.*, ¶ 17 (quoting *In re R.L.*, 2019 MT 267, ¶ 22, 397 Mont. 507, 452 P.3d 890).

¶17　"[A] parent has an obligation to avail herself of services arranged or referred by the Department and engage with the Department to successfully complete her treatment plan." *In re C.M.G.*, ¶ 17 (quoting *In re C.M.,* ¶ 19) (citations omitted) (alteration in original). *See also In re A.K.*, ¶ 37 (quoting *In re R.H.*, 250 Mont. 164, 171, 819 P.2d 152, 156 (1991)) ("Although the State may assist the parents in completing the treatment program, the parents retain the ultimate responsibility for complying with the plan.").

¶18　"A parent does not successfully complete a treatment plan by partial, or even substantial compliance." *In re A.K.*, ¶ 28 (quoting *In re I.B.*, 2011 MT 82, ¶ 27, 360 Mont. 132, 255 P.3d 56). A parent may complete all of the tasks of the plan, but the plan will not be deemed successfully completed unless the parent "effectuates the purposes for which the plan [was] designed.'" *In re A.K.*, ¶ 28 (quoting *In re I.B.*, ¶ 27) (alteration in original). *See also* § 41-3-609(1)(f)(i), MCA. A court is required to determine whether the parent has "actually effectuated the purposes of the treatment plan" rather than checking off tasks on a list. *In re A.K.*, ¶ 28 (citations omitted). A treatment plan is not required for termination of parental rights if the district court finds "the parent is or will be incarcerated for more than 1 year and reunification of the child with the parent is not in the best interests of the child because of the child's circumstances, including placement options, age, and developmental, cognitive, and psychological needs . . . ." Section 41-3-609(4)(c), MCA.

¶19　The Department has been actively engaged with Father since August 2017. It offered him a treatment plan at the beginning of the proceedings that included numerous

services to address his mental health and substance abuse issues, the unsafe and unsanitary living environment, and opportunities for parental education and visitation with the Children. However, Father's incarceration for multiple felony offenses necessarily limited his ability to perform his parental functions in accordance with his treatment plan and reunify with his Children. The District Court did not err in terminating Father's parental rights upon finding that the Department made the requisite reasonable efforts for reunification pursuant to § 41-3-423(1), MCA.

¶20 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's findings of fact are not clearly erroneous, its conclusions of law are correct, and its ruling was not an abuse of discretion. We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE